JOSEPH WHITAKER *et al.* V. THE LEAVENWORTH DEPOT
& RAILROAD COMPANY.

CONDEMNATION PROCEEDINGS; *Company, Not Entitled to Damages.*
Where W., the president of a stove company, without the order or
direction of the board of directors of the company, purchased real
estate with his own money, and took a conveyance in his own name,
with the thought in his mind at the time that the company would
need the lots for the transaction of its business, and after his pur-
chase verbally offered to convey the lots to the company when it was
able to purchase the same, if the purchase-money was refunded to
him, but the company never accepted the offer, and no conveyance
or written agreement was ever executed between W. and the company,
and subsequently the real estate was condemned for railroad pur-
poses, *held,* that although, with the permission of W. and without
consideration, the real estate was used by the company for several
years for storing coal, wood, material, etc., yet the company was
neither the legal nor equitable owner of the lots, and therefore not
entitled to recover, in condemnation proceedings, damages as the
owner thereof.

*Error from Leavenworth District Court.*

THE opinion states the case.    Judgment for plaintiffs *Whit-
aker* and another, at the March term, 1887.    They bring the
case to this court.

*Lucien Baker,* for plaintiffs in error.
*Stillings & Stillings,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an appeal from the determination
of commissioners appointed to appraise the value and assess
the damages sustained by the owners and occupants of lots one
and three, in block twenty, Leavenworth city, which had been
appropriated for the use of the Leavenworth Depot & Rail-
road Company.    The commissioners assessed the value and
damages by reason of the appropriation as follows: Lot one,
$1,500; lot three, $1,300; total, $2,800.    Trial was had be-
fore the court with a jury; the jury found that Joseph Whit-

aker was the owner of lots one and three, in said block twenty, and assessed his damages as follows: For lot one, $2,750; for lot three, $2,250; total, $5,000; and also assessed damages for the improvements on lot one at $100 in favor of the Union Stove and Machine Works.

There are twenty-one lots in block twenty; an alley runs through the block from north to south, leaving ten lots on the west side, which are covered with the shops of the stove works, and eleven lots on the east side; the title to the ten lots west of the alley is in the name of the stove works; the title to the lots east of the alley, excepting two and five, is in the name of Joseph Whitaker; lots one and three, in dispute, are east of the alley, and therefore in the name of Whitaker. It is claimed that lots one and three are held by Joseph Whitaker in trust for the stove works, and this company sought to have its damage to the entire block excepting lots two and five ascertained by the jury. Lot one was used by the stove works for rejected castings, and it also had thereon, belonging to the company, a stable, and a coke and coal-shed, where coke, coal and wood were stored; lot three was used by the company for flasks (that is, boxes made of boards for moulding castings), when not in use; these flasks, numbering several thousands, are piled on the ground to keep them from warping. On the part of the railroad company it is contended that Joseph Whitaker is the owner in fee simple of the lots in controversy; that the stove works is neither the legal nor equitable owner thereof; and that the stove works had no contract to purchase the lots, or either of them.

The facts of the case are about these: Joseph Whitaker was the president of the stove works, and claims to be the owner of the stock thereof, but other parties, who are directors, also hold certificates of stock. This company was organized May 27, 1879; it has carried on a general foundry ever since — the manufacture of stoves being the leading business; all of block twenty, with the exceptions of lots two and five, has been in the use more or less by the company ever since it commenced operation; the buildings of the company, excepting a stable,

coke and coal-shed on lot one, are all upon the ten lots on the west side of the alley; the stove company also uses other persons' ground adjoining its buildings as well as its own, for storage purposes.

Whitaker bought lot one in 1880, for $350, paid his own money for the lot, and took a conveyance of it in his own name.    He bought lot three in 1881, for $340, paid his own money for it, and took a conveyance in his own name.    The stove company had no money with which to buy the lots, or either of them, but upon several occasions Whitaker informed the board of directors that he would let the stove company have the lots if they would refund the money he had paid for them; the company never agreed to pay for the lots, and never paid anything for either, but with the consent of Whitaker, and without consideration, used the lots as above stated.

Joseph Behee, a witness upon the part of the stove company, testified that he was a member of the original company; that he was the general superintendent of the company at the time of the purchase of lots one and three; that Whitaker, after the purchase of lot one, said to him, "That some day the Union Works would want it, and if the company did want it, it could have it by paying the purchase-price and ten per cent."

We think the trial court decided rightly that there was no evidence presented showing or tending to show that the stove company was either the legal or equitable owner of the lots in dispute.    Upon the evidence presented, the only questions of fact to be submitted to the jury were as to the value of lots one and three, and the value of the improvements on lot one.

It is urged that there was a verbal contract for the sale of the lots between Whitaker and the stove company.    The cases of *Minns v. Morse*, 15 Ohio, 568, and *Jefferson v. Dallas*, 20 Ohio St. 68, are cited to establish the doctrine that a parol contract to convey land and the delivery of possession under it, is not void.    In this case the evidence does not show or tend to show that there was any contract of sale, verbal

or written, from Whitaker to the stove company. It is true that Whitaker, in his evidence, says he bought the lots for his company, but the board of directors never authorized or requested him to make any purchase, and after the purchase the board of directors never ratified his purchase. After lot one was purchased there was some talk between the members of the company and Whitaker that the company would take a lease of all the lots at a very small sum, simply to use them as a part of its works. After the purchase Whitaker informed the board of directors that he would let the stove company have the lots if it would refund the purchase-money, but the company never accepted his offer, never paid him any money, and was in no condition to raise or pay any money for the lots. The argument of counsel would be good upon the authorities cited and the decisions of this court if there had been any parol contract for the sale of the lots from Whitaker to the company, but the premises upon which the argument is based are not correct, because unsupported by the evidence. We do not think, upon the evidence, that the stove company could enforce in equity a specific performance for the conveyance of the lots. The railroad company is not breaking up any agreement or contract between Whitaker and the stove company as to the sale or conveyance of his lots, because no agreement, verbal or otherwise, ever existed.

The judgment of the district court will be affirmed.

All the Justices concurring.